[Cite as *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

In re Petition for the Adoption
of Z.H.

Court of Appeals No. WM-22-002

Trial Court No.  20225002

**DECISION AND JUDGMENT**

Decided:  November 3, 2022

* * * * *

John S. Shaffer, for appellants.

Austin C. Buchholz, for appellee.

* * * * *

**MAYLE, J.**

### I.        Introduction

**{¶ 1}** At issue in this appeal is a petition to adopt Z.H., filed by the minor child's

paternal grandmother, T.M.W. ("grandmother") and her husband, T.L.W.

("grandfather"), the appellants herein.[1] On June 2, 2022, the Williams County Court of Common Pleas, Probate Division found that, under R.C. 3107.07(A), the consent of the child's biological mother, K.L.V.D. ("mother"), was necessary for adoption.

{¶ 2} For the reasons that follow, we affirm.

## II.    Background

{¶ 3} Mother was married to K.H., ("father"), and the couple have two children together:  Z.H., born in 2013, and A.H., born in 2015.  This case involves Z.H. only.

{¶ 4} Z.H. began living with her paternal grandparents when she was five years old.  One year later, grandmother filed an application in the probate court to be appointed as Z.H.'s guardian.  Mother and father both consented to the guardianship.  On March 2, 2020, grandmother was named "the guardian over the child's person until her 18th birthday."  (June 2, 2022 J.E. at ¶ 13).

{¶ 5} Mother and father divorced in July of 2021.  An excerpt from mother and father's Shared Parenting Plan was made part of the record in this case.

{¶ 6} On February 9, 2022, grandparents filed a petition to adopt Z.H., then aged eight.  Father consented to the adoption.  Grandparents amended the petition on February 17, 2022 to allege that, pursuant to R.C. 3107.07(A), mother's consent was not necessary because she had failed to provide more than de minimis contact with, or to

---

[1] We refer to the minor herein as "Z.H." and note that the case is captioned *In the Matter of the Adoption of Z.H.*  Although the parties refer to the minor as "Z.L.W." in their briefs, that name—proposed by grandparents in their petition to adopt—was denied by the probate court and is the subject of this appeal.

2.

provide maintenance and support to, Z.H. in the preceding year.  Mother objected to the petition.  On March 30, 2022, the court held a hearing to determine whether mother's consent is required for adoption.

{¶ 7} At the hearing, grandfather testified that Z.H. has lived with them for "most of her life on and off but full time * * * since January [of 2019]."  After the guardianship took effect, grandparents and mother had "little to no contact," and when the parties did communicate, it was always between mother and grandfather, never grandmother.

{¶ 8} In preparation for the hearing, grandfather reviewed his text messages with mother, and prepared a written summary of all contacts between himself and mother since March of 2020, when the guardianship took effect.  According to grandfather, there were no other communications, except for those set forth in the written document, which includes the following chronology:

**2019**

January-19    [Z.H.] began to live with us

**2020**

March-20    Awarded Legal Guardianship ([mother] did not attend hearing with Judge Byrd)

June-20    Attended [Z.H.'s] K-Grad party.

10-7-20    [Father] and [mother] Text to take [Z.H.] to park.

10-19-20    Text me to tell [Z.H.] Happy Birthday

**2021**

3.

| 10-14-21 | Text if [Z.H.] was allowed to come to a birthday party |
|---|---|
| 10-19-21 | On or near her birthday, [mother] was invited to attend by [father] (we agreed) and she did not show and did not communicate she was not coming |
| 10-19-21 | Text me to tell [Z.H.] Happy Birthday |
| 10-26-21 | Text to have [Z.H.] for the weekend |
| 11-4-21 | Text to have [Z.H.] |
| 11-8/9-21 | Text if I had a chance to speak with [grandmother] on seeing [Z.H.] |
| 11-10-21 | Text to see [Z.H.].  Stated she hadn't seen her in a year, but during that year did NOT request to see her. |
| 11-10-21 | Text to meet and get GS cookie order placed with [father], but no request to see [Z.H.]. |
| 11-22-21 | Visitation filed with court (dismissed w/ prejudice) |

**2022**

No Requests

**{¶ 9}** Grandfather's chronology indicates that mother's last in-person visit with Z.H. was in June of 2020.  Between that time and the March 30, 2022 hearing—a period of 22 months—mother requested to visit Z.H. six times: once in October of 2020 and five times in October of 2021.  All of mother's requests were denied.  Mother also texted grandfather on Z.H.'s birthday in 2020 and again in 2021, asking that he convey her birthday wishes, which grandfather did do.

4.

**{¶ 10}** The trial court questioned grandfather extensively as to why mother's requests to visit Z.H. were denied. Grandfather testified that, for example, grandparents denied mother *and father's* joint request to take Z.H. to a park because they did not think it would be "prudent," having witnessed the parents use their other child "as an instrument in their divorce proceedings." Another request by mother to take Z.H. to a party was denied because grandparents "didn't feel it was in [Z.H.'s] best interests." They denied mother's request to "have [Z.H.] for the weekend" because of a scheduling conflict, but grandfather admitted that he did not suggest that mother "pick another weekend." A subsequent request by mother "to have [Z.H.]" was denied without any offer to reschedule. After those requests were denied, mother twice asked grandfather "if [he] had a chance to speak with [grandmother yet about] seeing [Z.H.]." Both times, grandfather told mother that he had not talked to grandmother yet, without further follow up. Mother's final request to see Z.H. on November 10, 2021 was denied by grandfather. According to grandfather's summary for that day, mother complained to him that "she hadn't seen [Z.H.] in a year."

**{¶ 11}** According to grandfather, mother provided no financial support, directly or indirectly, to Z.H. That is, mother did not pay, nor was she asked to pay, for any expenses related to Z.H.'s care. Likewise, mother was not subject to any court order that required her to support Z.H.

5.

{¶ 12} Grandmother testified next.  She described for the court how Z.H. came to live with her and grandfather in 2019:

> I moved [from out-of-state] to my home on * * * January 1, 2019. * * * I didn't have my luggage out of the vehicle and they were there with [Z.H.]  * * * [I said] of course,  I will take her, you know, but it wasn't an agreement that I was going to [keep] her because they said that [Z.H.] was [not] going to stay at my house because she was going to start kindergarten. * * * [B]ut I kept her the entire time.  I transported her daily to school and from school to Montpelier.  * * * I guess I don't know why it happened, it just, it just happened.

{¶ 13} Grandmother testified that she had "zero" contact with mother for "almost two (2) years" prior to the hearing.  Grandmother said that while she never "reached out" to mother to discuss matters concerning Z.H.—including, for example, [Z.H.]'s mental health counseling or her extracurricular activities—grandmother also "never said 'you can't come to our [home].'"  That is, grandmother "never unwelcomed her."

{¶ 14} Grandmother cited a number of reasons for wanting to adopt Z.H.  She said that Z.H. "is at the age now where she realizes. * * * [S]he wants us to be her mom and dad because she lives with us and she's told the school this."  Grandmother also expressed "worry about someone trying to take her."  Finally, grandmother testified that

6.

Z.H. deserves "stability," and grandmother "want[s] to provide for her" so that Z.H. "ha[s] a good life."

{¶ 15} The final witness called to testify was mother. Mother testified that she consented to the guardianship because Z.H. needed speech therapy and she would qualify for health insurance under grandfather's policy if she was in their care.

{¶ 16} Mother admitted that she had not seen Z.H. in nearly two years. Mother said that during that time, she was "work[ing] on getting [her] life back in order." Mother acknowledged that she could have texted grandmother directly and that she "placed the burden" on grandparents to provide her with information about her own daughter.

{¶ 17} In November 2021, mother filed a motion in the probate court asking for visitation time with Z.H. This motion was admitted as an exhibit in the instant case. In her motion, mother alleged that she "has been denied by [grandmother] the ability to have any visitation and companionship with her minor child." Mother testified that she filed this motion so that she "could actually see [her] daughter" because, despite asking "[grandparents] time and time and time," she was "always told no."

{¶ 18} On June 2, 2022, the probate court found that mother provided, or attempted to provide, more than de minimis contact with Z.H. It further found that— while mother failed to provide any maintenance and support to Z.H.—her failure to do so

7.

was justified. Under R.C. 3107.07(A), either finding required that mother consent to the adoption. Accordingly, the probate court denied grandparents' petition.

{¶ 19} Grandparents appealed and raise two assignments of error for our review:

1. The Trial Court erroneously held that the biological mother's attempts of contact with her child were more than de minimis and by reason thereof the natural mother's consent to the adoption was required.

2. The Trial Court erroneously found that there was justifiable cause for the biological mother to have not met her common law requirement to provide financial support for the child and by reason thereof the natural mother's consent to the adoption was required.

### III. Law and Analysis

{¶ 20} Because adoption terminates the fundamental rights of natural parents, written consent is generally required of parents before an adoption may proceed. R.C. 3107.06. Exceptions to this rule are set forth in R.C. 3107.07.

{¶ 21} The Supreme Court of Ohio has repeatedly held that "'[a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.'" *In re Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986), quoting *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). Relevant to this case, R.C. 3107.07(A) provides that consent is not required from:

8.

[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 22} Thus, a parent's consent is not required when the parent has failed without justifiable cause to provide more than de minimis contact *or* maintenance and support during the relevant one-year period. *In re Adoption of A.K.,* Slip Opinion at 2022-Ohio-350, ¶ 17. (Because the statute is written in the "disjunctive," a parent's failure to meet either provision is sufficient to nullify the need to obtain that parent's consent.).

{¶ 23} When construing R.C. 3107.07(A), courts are "obliged to strictly construe * * * [its] language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 132, 585 N.E.2d 418 (1992). That is because "[t]he rights to conceive and to raise one's children have been deemed essential, * * * basic civil rights of man, * * * and [r]ights far more precious * * * than property rights." (internal quotation marks and citations omitted.) *Stanley v. Illinois*, 405 U.S.

9.

645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). The permanent termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991)

{¶ 24} The Ohio Supreme Court previously formulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A) to determine if parental consent is required for adoption. *In re Adoption of M.T.R.,* 5th Dist. Licking No. 2022CA010, 2022-Ohio-2473, ¶ 27, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23.

{¶ 25} In the first step, the probate court determines whether the petitioner has proven, by clear and convincing evidence, that the natural parent failed to have more than de minimus contact with the child or failed to provide for the maintenance and support of the child. *In re Adoption of M.B.* at ¶ 23. If the probate court finds that the parent failed to do either, the court proceeds to the second step which determines whether the parent had justifiable cause for the failure to contact or provide support. *Id.*

{¶ 26} In 2019 the Ohio Supreme Court articulated a preliminary issue, i.e. "a new first step" in support cases, to be resolved *prior to* deciding whether a parent had failed to maintain and support her child. *In re Adoption of A.K.* at ¶ 16, citing *In re Adoption of B.I.,* 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 15. In *In re Adoption of B.I.,* the court introduced the following "three-step test":

To determine whether a parent has failed to provide child support as required by law or judicial decree involves a three-step analysis. The court must first determine what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure. *Id.* at ¶ 15.

{¶ 27} Regarding the first prong of this new three-part analysis, the Supreme Court clarified that where "a court has issued a decree relieving a parent of any child-support obligation," there is not a separate obligation that arises by law under which that parent is still required to provide maintenance and support to the child. *Id.* at ¶ 17. In other words, a court cannot find that a parent failed to provide support "required by law" for purposes of R.C. 3107.07(A) where that parent was subject to a no-support order. *Id.* at ¶ 38.

{¶ 28} In 2022, the Ohio Supreme Court incorporated the same "three-part test" to the "more than de minimis contact" prong of the statute. In *In re Adoption of A.K.,* the court held that "a parent's right to consent to the adoption of his or her child is not

extinguished under R.C. 3107.07(A) when the parent did not have more than de minimis contact with the minor child during the statutory period *because* the parent was acting in compliance with a no-contact order prohibiting all communication and contact with the child." (Emphasis added.) *Id.* at ¶ 21.

{¶ 29} Thus, if the parent was acting pursuant to a court order in failing to provide maintenance and support *or* in failing to provide more than de minimis contact, then "the analysis ends there." *In re Adoption of A.K.* at ¶ 14, citing *In re Adoption of B.I.* at ¶ 16.

{¶ 30} In the absence of a no-support or no-contact order, the probate court must proceed to the second step of the analysis. The court must consider whether the petitioner has proven, by clear and convincing evidence, that the natural parent failed to have more than de minimis contact with the child or failed to provide for the maintenance and support of the child during the relevant one-year period. *In re Adoption of M.B.* at ¶ 23. Clear and convincing evidence is more than a preponderance of the evidence but does not rise to the level of beyond a reasonable doubt as required in criminal cases. It must produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), syllabus paragraph three.

{¶ 31} "A trial court has discretion to make these determinations and in connection with the [second] step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *In re Adoption of M.B.* at ¶

12.

25. To find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 32} If the parent failed to provide more than de minimis contact or support and maintenance during the one-year time period, the probate court moves to the third step— i.e., determining whether there was justifiable cause for the parent's failure. A probate court's determination as to "justifiable cause" under R.C. 3107.07(A) will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140, at paragraph two of the syllabus. The probate court, as the trier of fact, determines the weight and credibility of the evidence. *Seasons Coal Company, Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). And, we may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993). Instead, our role is to examine the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of T.U.,* 6th Dist. Williams No. WM-19-012, 2020-Ohio-841, ¶ 19, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

13.

{¶ 33} With the above framework in mind, we turn to grandparents' assignments of error, which we address in reverse order.

## A. Mother had justifiable cause for failing to provide maintenance and support as required by law.

{¶ 34} First, we must determine "what the law or judicial decree required of the parent for the year prior to the filing of the petition." *In re Adoption of B.I.* at ¶ 16.

{¶ 35} Under Ohio's statutory scheme regarding families and children, there are two statutes regarding the parental obligation to support their children: (1) a general obligation of parents to support their children imposed by law in R.C. 3103.03 ("The biological * * * parent must support the parent's minor [child] out of the parent's property or by the parent's labor"); and (2) a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119. *Id.* A "parent can have only one obligation status at a time, and a specific child-support obligation "supersedes the general obligation once the court issues its decree." *Id.* at ¶ 27.

{¶ 36} In this case, the parties agree that mother was not subject to any specific child-support obligation imposed by judicial decree, and the trial court specifically found that "[t]here was not a Judicial Decree ordering child support." Indeed, the judgment entry granting mother and father a divorce, which was admitted at trial, indicates that the shared parenting plan applied only to the couple's other child, A.H.—not Z.H. Specifically, the judgment states that "[t]he minor child, [Z.H.] will not be addressed [because the Probate Court in the guardianship case] has jurisdiction over [Z.H.]." (Ex.

14.

2 at 3). Thus, this is an instance of there being "no support order in place" rather than an instance of a "no-support order."[2] *Id.* at ¶ 31. Accordingly, mother was subject to the general obligation of parents to support the child as imposed by law in R.C. 3103.03. *Accord In re Adoption of M.T.R.,* 5th Dist. Licking No. 2022CA010, 2022-Ohio-2473 at ¶ 27.

{¶ 37} Next, we consider whether the trial court abused its discretion when it concluded that the grandparents proved, by clear and convincing evidence, that mother failed to comply with her general support obligation during the one-year period. As the probate court recognized, it is "undisputed that the mother did not provide financial support to [grandparents] for the minor child since the child was placed with them" in 2019.

{¶ 38} In the third and final step, we consider whether the trial court's determination of justifiable cause was against the manifest weight of the evidence. "'[J]ustifiable cause' is not defined in R.C. 3107.07." (Citation omitted*.) In re Petition for Adoption of A.V.*, 6th Dist. Sandusky No. S-21-019, 2022-Ohio-2969, ¶ 32. Black's Law Dictionary (11th ed. 2019) defines the term "justifiable" as "[l]egally or morally acceptable for one or more good reasons; excusable; defensible." *Id.*

---

[2] A "no-support order* * *encompasses * * * orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero." *In re Adoption of M.B.,* 6th Dist. WM-20-004, 2020-Ohio-4940, ¶ 14 at fn.1 quoting *In re Adoption of B.I.* at ¶ 16, fn. 1.

15.

**{¶ 39}** In this case, the probate court found that there was justifiable cause for mother not to have met her obligation to provide financial support for Z.H. It reasoned,

> The record in the guardianship case does not reflect that [Grandmother] ever represented that she would require the biological mother to meet her common law duty to provide for the child. Throughout the history of the guardianship there was never a request by the [grandparents] for financial contributions from either parent. The costs of schooling, extracurricular activities for the child or other expenses were never shared with the biological mother. Had [grandparents] requested financial support and the biological mother ignored or denied those requests, the Court would have considered that evidence under the justifiable cause analysis.

**{¶ 40}** On appeal, grandparents argue that mother "failed in her burden to demonstrate justifiable cause." But, a non-consenting natural parent is not required to prove that her failure to support her child was justifiable. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985) (Addressing the failure to provide more than de minimus contact prong). In *Holcomb*, the Ohio Supreme Court made clear that because these cases involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proof, and "[n]o burden is to be placed upon the non-consenting parent to prove that [her] failure to [provide maintenance and support]

16.

was justifiable." *Id.* at 368.  The statute is drafted "to require *petitioner* to establish each of his allegations," including lack of justifiable cause.  *Id.* (emphasis added).

{¶ 41} Grandparents argue that it is of "no consequence that the [grandparents] are able to financially provide for the child."  But the relevant fact is not that grandparents are able to financially support Z.H. (which they do not dispute)—it is that grandparents never asked mother to make any financial contributions toward Z.H.'s expenses.  When "'a child's needs are adequately provided for by a custodian who is in a better financial position than the natural parent, and the custodian expresses no interest in receiving any financial interest from the natural parent, the natural parent's failure to support the child may be deemed justifiable.'"  *In re Adoption of A.K.,* 8th Dist. Cuyahoga Nos. 108521 and 108522, 2020-Ohio-3279, ¶ 23, *aff'd on other grounds,* 2022-Ohio-350, ¶ 23 quoting *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 46.  *See also In re Adoption of Foster*, 22 Ohio App.3d 129, 489 N.E.2d 1070 (3d Dist.1985), *overruled on other grounds, In re Adoption of Sunderhaus*, 63 Ohio St.3d at 129, 585 N.E.2d 418 (In conjunction with the failure to allow the non-custodial parent to visit the child, the refusal to accept support payments provided justifiable cause and as such, the non-custodial parent's consent was needed in order for the adoption to proceed).

{¶ 42} Here, grandparents never requested support payments from mother, and the record suggests that grandparents are better able to meet Z.H.'s financial needs, given mother's testimony that she consented to the guardianship so that her daughter would

17.

qualify for medical insurance. Accordingly, there is competent and credible evidence to support the trial court's determination that mother had justifiable cause for failing to provide for the maintenance and support of Z.H., and the judgment is not against the manifest weight of the evidence. Accordingly, grandparents' second assignment of error is not well-taken.

## B. Mother did not fail to provide more than de minimis contact

{¶ 43} In their first assignment of error, grandparents claim that the probate court erred when it found that mother provided, or attempted to provide, more than de minimis contact with Z.H. To resolve this issue, we apply the same three-part test, as set forth above.

{¶ 44} First, we note that there is no law or judicial decree prohibiting mother's contact with the child. *In re Adoption of A.K.* at ¶ 18, 21.

{¶ 45} Second, we consider whether the probate court abused its discretion when it determined that grandparents did not prove, by clear and convincing evidence, that mother failed to have more than de minimis contact with Z.H. in the year preceding the filing of the adoption petition. As this court has observed,

> While not statutorily defined, "more than de minimis contact" implies contact—either attempted or successful—beyond a single occurrence. *In re J.D.T.*, 7th Dist. Harrison No. 11HA10, 2012-Ohio-4537, ¶ 9. That is, the statute demands "more quality and quantity" and requires

"more effort from the parent to have contact and communication with the child" than is shown by one-time contact. *In re Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 10.

*In re Adoption of T.U.,* 6th Dist. Williams No. WM-19-012, 2020-Ohio-841, at ¶ 25.

{¶ 46} Here, the probate court specified that it reviewed evidence "not only in the one year look back period but since the date of placement [in January of 2019]," which it was authorized to do. *See, e.g., In re P.C.*, 5th Dist. Stark No. 2021 CA 00087, 2021-Ohio-4418, ¶ 20 (A probate court is not restricted to focusing solely on the one-year statutory period in making a determination.). The court considered mother's in-person visit with Z.H. in June of 2020, as well as her text messages with grandfather. The record shows that while mother did not have any in-person visits with Z.H. after June 2020, it was not for lack of trying. It is undisputed that mother texted grandfather six times, once in 2020 and five times in 2021, asking that she be allowed "to take," or "to have" or "to see" Z.H. She also texted grandfather two other times with birthday messages for Z.H.

{¶ 47} This evidence clearly shows that mother displayed "more effort * * * than is shown by [a] one-time contact." *In re Adoption of T.U.* Indeed, as the trial court recognized, mother's unsuccessful efforts to see her child "culminated in the mother filing a Motion for visitation in the guardianship case in November 2021."

{¶ 48} We emphasize that the issue to be resolved is not whether mother could have done more to contact her child but whether she did enough, such that it can be said

19.

that it was "more than de minimis." The record is clear that, during the relevant one-year time period, mother made several attempts to contact Z.H., but grandparents thwarted every attempt by mother to reinsert herself into Z.H.'s life.

{¶ 49} Based on this record, the trial court did not abuse its discretion when it concluded that mother's in-person contact and other attempted contacts were more than de minimis. Accordingly, we need not consider justifiable cause, which is the third and final step of the analysis. Grandparents' first assignment of error is not well-taken.

## IV. Conclusion

{¶ 50} For the reasons expressed above, we conclude that the probate court did not err in determining that mother's consent is required for the adoption of Z.H. Accordingly, grandparent's first and second assignments of error are not well-taken, and the June 2, 2022 judgment of the Williams County Probate Court is affirmed.

{¶ 51} Grandparents are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                _____
                                             JUDGE
Thomas J. Osowik, J.        

20.

_____
Christine E. Mayle, J.                                JUDGE
CONCUR.

_____
                                                          JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.