**[Cite as *In re B.*, 2025-Ohio-2801.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

In the Matter of B.                                    Court of Appeals No.  WD-24-071

Trial Court No.  202404017

**DECISION AND JUDGMENT**

Decided:  August 8, 2025

* * * * *

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment by the Wood County Court of Common Pleas, Probate Division, which determined appellee's written consent was required to appellant-stepfather's petition for adoption of the minor child, B (also known as B.M.), and dismissed the petition. For the reasons set forth below, this court affirms the probate court's judgment.

## I. Background

{¶ 2} Mother, A.T., and appellee-father, S.M., are the natural parents of B, a minor, and of Li.M., B's older sister by two years.[1] Mother and appellee are divorced. Appellant, C.T., is married to mother, is the stepfather of B, and is the petitioner in this matter. Appellee is married to La.M., who is stepmother to B.[2]

{¶ 3} On July 18, 2024, appellant filed a petition to adopt 14-year-old B and mother concurrently filed her written consent to that adoption.

{¶ 4} Using the probate court's form for a petition for adoption of a minor pursuant to R.C. 3107.05, appellant checked-off the boxes that appellee's written consent to the adoption was not required for two reasons: (1) "The parent has failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner"; and (2) "The parent has failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the

---

[1] Mother and appellee are also the natural parents of A.M., B's oldest sister and an adult at the time of the petition.

[2] La.M. formally adopted Li.M. through Putnam County probate court order on February 28, 2024.

2

petitioner." The petition also stated that B was living in the home of the petitioner with no further information.[3]

{¶ 5} Appellee, acting pro se and using the probate court's forms, on August 30 and September 4, 2024, opposed the adoption petition pursuant to R.C. 3107.11. The preprinted objection forms simply stated for appellee that "they are the father of the above-named minor child and objects to the Petition for Adoption of Minor Child. The nonconsenting parent acknowledges that they must appear for the hearing at the time and place as set forth in the Notice of Hearing on Petition for Adoption." With no further explanation, attached to the objections were copies of certain filings from other courts, among other papers: 1) from Hancock County domestic-relations court file stamped on August 6, 2024, regarding appellee's pending motion for contempt for mother's failure to facilitate parenting time with B and B's companionship with Li.M.; 2) from Putnam County Municipal Court file stamped on July 10, 2024, denying mother's request for a peace warrant under R.C. 2933.02 against La.M., Li.M., and La.M.'s daughter, who is B's stepsister; and 3) from Wood County Domestic Relations Court file stamped on May 22, 2024, denying mother's petition for an ex-parte domestic violence civil protection order for B and against La.M. under R.C. 3113.31 and, after a full hearing, the court's August 9 order denying mother's petition entirely. Elsewhere in the record we learn that mother's civil actions arose from Li.M.'s and La.M.'s attendance at B's dance recital on

---

[3] Under R.C. 3107.05(A)(4), a petition for adoption shall include "the date of placement of a minor and the name of the person placing the minor."

3

May 19, 2024, when mother and B rejected Li.M.'s and La.M.'s attempts to communicate with B for themselves and on behalf of appellee.

{¶ 6} On September 20, 2024, the probate court held a contested-consent hearing on the preliminary issue of whether appellee's written consent to appellant's adoption petition is not required under R.C. 3107.07(A), which in effect at the time stated:

> Consent to adoption is not required of any of the following:
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner.[4]

{¶ 7} The probate court heard testimony from five witnesses (appellee, mother, A.M., Li.M., and appellant) and admitted 15 exhibits into evidence over some objections. Appellee represented himself at the hearing. After taking the matter under advisement, on October 1, 2024, the probate court dismissed appellant's adoption petition because it found appellee's written consent to the adoption of B was necessary. The probate court stated four reasons for its determination that appellant failed to provide clear and convincing evidence that appellee's written consent was not required under both clauses of R.C. 3107.07(A).

---

[4] Effective March 21, 2025, the phrase "to provide for the maintenance and support of the minor" was replaced with "to provide meaningful and regular maintenance and support of the minor." In addition, the phrase, "or the placement of the minor in the home of the petitioner" was deleted.

4

**{¶ 8}** First, the probate court reviewed the period from July 18, 2023, through July 18, 2024, as the "period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner," citing *In re Adoption of B.B.*, 2023-Ohio-4134 (6th Dist.). The probate court explained:

> At the September 20, 2024 hearing, there was essentially no testimony relating to the placement of [B] in the home of the petitioner – the other one year look back period possibility. There was no direct testimony as to when [B] began residing in the home of the petitioner. The information within Exhibit F[5] suggests that a modified shared parenting plan is in existence with [B] residing primarily with mother and mother being [B's] residential parent for purposes of determining school district. There is no further information relative to legal custody of [B] and no direct testimony as to the intent of the parties relative to [B] residing with the petitioner. Further, the petition itself as filed does not provide a date from which [B] has been actually residing in the home of petitioner. . . . There is insufficient evidence before the court as to the placement of the child in the home of the petitioner.

**{¶ 9}** Second, citing *In re Adoption of M.M.*, 2023-Ohio-397, ¶ 7 (6th Dist.), fn.2, which cites *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, ¶ 46 (6th Dist.), the probate court found that it is authorized to consider evidence outside the period between July 18, 2023, and July 18, 2024, for R.C. 3107.07(A) purposes. Appellee had argued that the post-divorce court orders from other jurisdictions show ongoing litigation and provide important context for this matter. The probate court agreed and found that when determining whether justifiable cause exists "it is absolutely necessary to look back at the demonstrated history of the relationship between the parties to some extent. This allows

---

[5] After the parties divorced, on May 4, 2020, the Hancock County domestic-relations court ordered a modified shared parenting plan where B primarily resided with mother, and Li.M. primarily resided with appellee.

5

the court to have some idea of the nature of the relationship between mother and father leading up to any applicable time periods."

{¶ 10} Third, the probate court determined under R.C. 3107.07(A) that appellee had justifiable cause for failing to provide more than de minimis contact with B. Given that appellee admitted his last substantive contact with B was on June 30, 2019, when he took the family, including nine-year-old B, to a major-league baseball game, the probate court reviewed the context for it. The probate court found the May 4, 2020 domestic-relations court decision in the record "sets the stage for the type of animosity present." The domestic-relations decision noted "mother will do little to honor or facilitate court approved parenting time . . . [and] at the in camera interview, the magistrate observed significant signs that mother coached [B]."[6] The probate court personally observed, "The demeanor and presentation of the parties at the September 20, 2024, hearing is . . . indicative of the poor relationship." Appellee's communication efforts "resulted in the police being called [by mother]; phones being hung up; or [B] outright refusing to visit with father; and/or [B] making statements such as he hates father."

{¶ 11} The probate court reviewed evidence of appellee's intent of "more effort" to have contact with B, citing *In re Adoption of J.R.H.*, 2013-Ohio-3385, ¶ 20-21 (2d

---

[6] The probate court's decision incorporates appellee testimony that B "is developmentally delayed and suffers from autism. He can be bribed and persuaded to say things, but when asked by the Guardian Ad Litem and the magistrate in in-camera interviews, he admitted that his mother has told him to lie." He also testified that B testified in the Putnam County Municipal Court case that "his mother has told him to not have communication" with appellee.

6

Dist.). The probate court explained why it found justifiable cause for appellee's de minis contact with B:

> In the case at bar, it is undisputed father has not had contact or communication with [B] for roughly five years. However, it is apparent from a review of the actual exhibits before the court, as well as the testimony presented, that mother and father lack the ability amongst themselves to facilitate communication between [B] and father. From father's perspective, the situation had apparently evolved to such an extent that father has stopped independently attempting to make contact with [B] and has begun attempting to utilize family members to facilitate contact. These attempts have led to, on two established occasions, mother filing legal actions against father's immediate family members as a result of incidents occurring. Mother's legal filings against father's immediate family members – filings which ultimately resulted in mother's requests for relief being denied – further chilled the overall atmosphere present. . . . From this court's assessment of the circumstances present, it is apparent the relationship between mother and father continued to deteriorate from 2019 to the present. Over the course of this extended period of time -- a period of time which would include the one year look back period established in this matter -- there was evidence to demonstrate that father had - by various means - made efforts to have contact or communication with [B]. Father's efforts were unsuccessful and there was no suggestion that mother made a reasonable effort to facilitate or address the concerns impeding father's efforts. Further, when father began to attempt to use other family members to further facilitate contact with [B], mother's actions in immediately filing legal proceedings against father's immediate family members further served as a means to impede or slow father's attempts at access. . . . Based on the information before the court, the court is able to come to a firm conviction or belief that mother's actions and inactions, in fact, in various ways, "significantly discouraged" father's ability to have more than de minimis contact with [B] for the established one year look back period.

{¶ 12} Fourth, citing *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, at ¶ 26 (6th Dist.), which cites *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 15, the probate court found that the determination of whether appellee has failed, without justifiable cause, to provide for the maintenance and support of B as required by law or judicial decree, i.e.,

7

child support, is a three-step analysis: 1) what the law or judicial decree required of appellee during the applicable one-year period; 2) whether appellee complied with his obligation under the law or judicial decree; and 3) if appellee did not comply, was there justifiable cause. Appellee testified, "There is (sic.) no orders for financial support." Admitted into evidence without objection were copies of orders by the Hancock County domestic relations court that appellee's child support obligations for B were zero. The probate court found that appellee complied with the zero-dollar-child-support orders. Then under *In re Adoption of B.I.* at ¶ 43, the probate court found that "a zero-support order of a court of competent jurisdiction does not extinguish the requirement of that parent's consent to the adoption of the child." The probate court concluded that "justifiable cause exists for any purported failure of father to provide for the maintenance and support of [B] during any applicable one year look back period which may be utilized in this matter."

{¶ 13} Appellant timely appealed with one assignment of error: "The conclusion that appellee's consent to appellant's adoption petition is required was against the manifest weight of the evidence. Appellee did not file a responsive brief in this appeal.

## II. The R.C. 3107.07(A) Parental-Consent Exception

{¶ 14} We agree with appellant that R.C. 3107.06(B) requires appellee's written consent to appellant's adoption of B unless consent is not required under R.C. 3107.07. *In re Adoption of H.P.*, 2022-Ohio-4369, ¶ 20. Where a party is invoking the parental-consent exception, that party carries the burden of establishing the exception by clear and

convincing evidence. *Id.*; *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, (1985). Clear and convincing evidence is proof that produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Id.*

{¶ 15} We also agree with appellant that our review of the probate court's determination under R.C. 3107.07(A) is on the manifest weight of the evidence. *In re Adoption of M.M.* at ¶ 38 (6th Dist.). "[O]ur role is to examine the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *Id.*

### A. Applicable One-Year Period

{¶ 16} Appellant argues appellee failed to meet his burden because no "alleged interference [by mother] occurred within the timeframe" where "the last message [from appellee] sent to B in May 2022 was far before the look-back period." Consequently, he argues mother could not have significantly discouraged or interfered with appellee's attempts to communicate with B if appellee failed to do so within the applicable period, citing *In re Adoption of L.S.*, 2020-Ohio-224, ¶ 27 (3d Dist.). However, that court found that the central question to be decided was whether there was significant interference with visitation and communication and not whether it was possible for the natural parent to have done more to overcome the interference. *Id.*

{¶ 17} We find appellee-petitioner is misguided about the strict confines of the applicable one-year period under R.C. 3107.07(A). There is clear and convincing

9

evidence in the record for the probate court to form its firm belief it was "at least" July 18, 2023, through July 18, 2024, which is "at least" the year prior to when appellant filed his petition. Here, unlike *In re Adoption of B.B.*, 2023-Ohio-4134, at ¶ 24 (6th Dist.), the probate court was not silent in evaluating when B was placed in appellant's home but found it could not form a firm belief of that alternative date under R.C. 3107.07(A) due to the lack of testimony and the scant evidence in the record.

## B. Failing to Provide More Then De Minimis Contact

{¶ 18} Appellant argues that where appellee admitted he had not contacted B for five years, except for one attempt in May 2022, that is evidence under R.C. 3107.07(A) of appellee failing, without justifiable cause, to provide more than de minimis contact with B during the applicable one-year period. He argues appellee was required to make, but did not make, "more effort," i.e., "more quality and quantity," citing *In re Adoption of M.M.*, 2023-Ohio-397, at ¶ 42 (6th Dist.). Then, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph two of the syllabus, appellant argues the burden shifted to appellee to prove by clear and convincing evidence of justifiable cause: that mother either significantly discouraged or interfered with appellee's attempts to contact B where mother "has no burden to affirmatively make sure that [B] has contact with appellee. However, appellant is not relieved of his ultimate burden for his adoption petition. *Id.* (despite the foregoing shift for appellee "to show some facially justifiable cause for such failure . . . [t]he burden of proof . . . remains with the petitioner").

{¶ 19} We agree with appellant that appellee did not have substantive contact with B since the end of June 2019 but disagree that his failure to have more than de minimis contact with B was without justifiable cause.

{¶ 20} Appellant argues that sending Li.M. and La.M. to B's dance recital on his behalf were "not his own attempts" and demonstrates his "lack of trying" to visit B, citing *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, at ¶ 46 (6th Dist.). We disagree and find that appellee has tried to contact B. The record contains the personal observations of the probate court, the witness testimonies, and the admitted evidence to support the court's firm belief that since 2019 mother actively interfered with appellee's efforts to communicate with B -- whether directly, through family members, or through post-divorce legal proceedings. Mother has called the police on appellee, Li.M., and La.M. and has actively sought to legally restrain them from having contact with B, whether directly or on behalf of appellee. There is also evidence that mother coached B to hate appellee and to refuse visits and communication with appellee, which has spilled over to rejecting contact from other family members, including B's sisters, stepsister, and stepmother.

{¶ 21} Appellant next argues that appellee filing a contempt motion for mother's alleged failure to facilitate parenting time with B and B's companionship with Li.M. is contact with the divorce court and does not qualify as de-minimis contact with B under R.C. 3107.07(A), citing *In re Adoption of L.S.*, 2020-Ohio-224, at ¶ 24 (3d Dist.). However, that appeals court clarified that while "filing a contempt motion is not, in and

of itself" satisfactory under R.C. 3107.07(A), it "could be evidence of significant interference with a parent's visitation rights or of a justifiable cause for a parent's failure to engage in more than de minimis contact with a child" depending on the facts of the case. *Id.* at fn. 2. Here, there was evidence that mother did little to honor or facilitate appellee's court-ordered parenting time with B, who lives with mother, and the parenting time required coordination by both parents through Our Family Wizard. Mother testified that she was unaware of B having an account with Our Family Wizard for appellee to communicate directly with B, and appellee testified only mother's email was connected with Our Family Wizard, so mother controlled B's access to appellee's messages.

{¶ 22} Nevertheless, appellant argues that appellee's excuses for not communicating directly with B – such as failing to send B anything in the mail to B's known mailing address or "failing to do anything for a period of 17 months after the one refusal [by mother] to permit visitation" -- are insufficient to meet his justifiable-cause burden when viewing the entire record. We disagree. As previously discussed, appellee did not fail to do "anything" for purposes of R.C. 3107.07(A) in response to mother's interference. To supplement appellee's direct efforts, Li.M. tried reaching B through B's iPad, which mother controls, and Li.M. and La.M. tried to reach B at the dance recital, to which mother responded with litigation. And on cross-examination mother testified that due to ongoing home renovations the address given to appellee for B was a mailing address and not where B resided or could be visited, despite appellee expressing his

desire to see B in person. During the hearing, mother did not provide either the location where B resided or B's cell phone number.

{¶ 23} We find there is clear and convincing evidence from appellee of justifiable cause under R.C. 3107.07(A) for failing to provide more than de minimis contact with B during the period of at least July 18, 2023 through July 18, 2024.

### C. Failing to Provide Maintenance and Support

{¶ 24} Appellant does not argue any error for the probate court's separate finding under the other clause of R.C. 3107.07(A): that appellant failed to meet his burden that appellee failed without justifiable cause to provide for the maintenance and support of B during the applicable one-year period. Since appellant has failed to develop this argument, we will not create an argument on his behalf. *State v. Henning*, 2023-Ohio-2905, ¶ 65 (6th Dist.).

{¶ 25} Nevertheless, there is clear and convincing evidence in the record for the probate court to form its belief that appellee's court-ordered child support obligation for B was zero, which he met. That fact, alone, created an automatic exemption from the probate court's justifiable-cause analysis. *In re Adoption of A.K.*, 2022-Ohio-350, ¶ 16.

### III. Conclusion

{¶ 26} We reviewed the entire record; weighed the evidence and all reasonable inferences; considered witness credibility; and determined, in resolving conflicts in the evidence, the probate court did not clearly lose its way and created such a manifest miscarriage of justice that the judgment must be reversed. Based on the foregoing, we

13

find the probate court's determination that appellant failed his clear-and-convincing evidentiary burden for the parental-consent exception under R.C. 3107.07(A) was not against the manifest weight of the evidence.

{¶ 27} Appellant's sole assignment of error is not well-taken.

{¶ 28} On consideration whereof, the judgment of the Wood County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.