[Cite as *In re Adoption of H.P.*, 2021-Ohio-4567.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

IN RE:  THE ADOPTION OF:                    CASE NO. 15-21-03

    H.P.,

[KAIDIN W. - APPELLANT]                    **O P I N I O N**

Appeal from Van Wert County Common Pleas Court
Probate Division
Trial Court No. 20204017

**Judgment Reversed and Cause Remanded**

**Date of Decision:  December 27, 2021**

APPEARANCES:

    *Elizabeth M. Mosser* **for Appellant**

    *Jerry M. Johnson* **for Appellees, Jeffrey and Nicole P.**

    *John C. Huffman* **for Appellee, Josephine D.**

**WILLAMOWSKI, P.J.**

{¶1} Appellant Kaidin W. ("Kaidin") brings this appeal from the judgment of the Court of Common Pleas of Van Wert County, Probate Division, denying his motion to be joined as a party and finding that his consent to the adoption of H.P. was unnecessary. On appeal, Kaidin claims that the trial court erred in 1) holding that the putative father statute applied in his case once paternity was established, 2) denying his motion to be joined as a party, 3) applying R.C. 3107.06(B)(3) in an unconstitutional manner. For the reasons set forth below, the judgment is reversed.

{¶2} The trial court in this case made the following findings of fact. Prior to February 2020, Kaidin and Josephine D. ("Josephine") were in a dating relationship. Doc. 27 at 1. In February 2020, Josephine advised Kaidin that she was pregnant. Doc. 27 at 1. Josephine indicated she wished to place the child for adoption, but Kaidin told her he wanted to keep the child. Doc. 27 at 1. For the next several months, Kaidin spoke weekly with Josephine or her father James D. ("James") about the pregnancy. Doc. 27 at 2. This continued until Josephine asked him not to call so frequently, when he reduced his contact to every other week. Doc. 27 at 2. Kaidin was informed that the due date of the child was September 5, 2020. Doc. 27 at 2. Kaidin retained counsel who advised him to register with the putative father registry after the birth of the child. Doc. 27 at 2. On August 26, 2020, Kaidin's attorney advised Kaidin that Josephine and her family did not want him to contact them anymore. Doc. 27 at 2. H.P. was then born on August 31, 2020. Doc. 27 at

-2-

2. On September 3, 2020, H.P. was placed for adoption with Jeffrey and Nicole P. and they filed their petition to adopt the child on the same day in the Van Wert County Probate Court. Doc. 27 at 2. On September 16, 2020, counsel for Kaidin learned of the birth of the child and he notified Kaidin of the birth, advising him to register on the putative father registry immediately. Doc. 27 at 2. An hour or so later, the attorney learned the actual birthdate of the child and notified Kaidin of the time. Doc. 27 at 2. On September 17, 2020, Kaidin filed a petition to determine paternity and obtain custody in the Logan County Juvenile Court. Doc. 27 at 2. Kaidin also filed in the Van Wert County Probate Court a motion to intervene in the adoption case along with an affidavit indicating that he was objecting to the adoption and that he wanted custody of H.P. Doc. 7, 18.

{¶3} The hearing on the adoption petition was held on January 21, 2020. Prior to the hearing, the juvenile court established that Kaidin was the father of H.P. Although Josephine defended the paternity finding, no appeal was taken from the judgment. At the consent hearing, the parties stipulated that Kaidin had been legally determined to be the father of H.P. pursuant to R.C. 3111.04. Doc. 27 at 2. The trial court noted this finding and also noted that Kaidin had demonstrated a deep commitment to parenting H.P. Doc. 27 at 3. However, the trial court determined that since Kaidin was a putative father at the time of the filing of the adoption petition and had not filed with the registry in a timely manner, his consent was not needed for the adoption. Doc. 27 at 4. The trial court then denied the motion to

intervene. Doc. 27 at 4. The trial court did not address Kaidin's status as biological father as was determined by the juvenile court and stipulated by the parties. Kaidin appeals from this judgment and raises the following assignments of error.

**First Assignment of Error**

**The trial court erred by overruling [Kaidin's] objection to the adoption and finding his consent unnecessary.**

**Second Assignment of Error**

**The trial court erred by denying [Kaidin's] motion to be joined as a party.**

**Third Assignment of Error**

**R.C. 3107.06(B)(3) is unconstitutional as applied in this matter when parentage is legally established at the time of the consent hearing.**

**Fourth Assignment of Error**

**R.C. 3107.07(B)(1) is unconstitutional as applied in this matter when [Kaidin] registered with the putative father registry prior to the consent hearing, was present at the consent hearing, and petitioners had notice of such registration and objection to the petition within two weeks of their petition being filed.**

{¶4} In the first assignment of error, Kaidin claims the trial court erred by overruling his objection to the adoption and finding his consent was unnecessary as a putative father. *In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, ¶ 16, 47 N.E.3d 803. At the time of the filing of the adoption petition, Kaidin had not registered with the putative father registry and did not do so within 15 days of

the birth.[1]  "For the purpose of preserving the requirement of his consent to an adoption, a putative father shall register before or not later than fifteen days after the birth of the child."  R.C. 3107.062.  The consent of a father who fails to register in a timely manner is not needed for the adoption to proceed.  R.C. 3107.07.  There is no question that Kaidin, at the time the petition to adopt was filed was a putative father.  There is also no question that Kaidin did not register within 15 days of the birth of H.P.  As a matter of law, Kaidin's consent as a putative father was not necessary.  The trial court did not err in making such a determination.

{¶5} Although the trial court did not err in finding Kaidin's consent was not necessary as a putative father, that is not the end of the consideration because at the time of the hearing Kaidin had a second status, that of biological father whose paternity had been judicially determined.

> **[S]eparate from [the putative-father] process, a father still has the option of securing the right to receive notice of the filing of an adoption petition and the right to withhold consent to an adoption by establishing legal paternity through court or administrative proceedings[.]**

*H.N.R., supra* at ¶ 19.  The failure to timely register merely "precludes him from receiving notice and an opportunity to prove that his consent as a mere putative

---

[1] This court notes that the trial court's findings of fact show that despite the failure to register with the putative father registry, Josephine was aware of Kaidin's objections. Prior to the birth, Josephine and her family broke off all communication with Kaidin and told him to not contact them.  When the child was born, no one contacted Kaidin and Josephine proceeded to place the child for adoption even knowing that Kaidin objected. Kaidin did not even learn of the child's birth, which was early, until after the time to register had passed.  The trial court also found that Kaidin's counsel was the one who told him not to register until after the birth.

father should be required for a child's adoption." *Id*. This court notes that this issue stems from the fact that two different courts were exercising their original exclusive jurisdiction at the same time. Prior to 2016, the rule in Ohio was if one court was exercising jurisdiction over a child, other courts would stay any proceedings filed until the first court was finished exercising its jurisdiction. The Supreme Court of Ohio has since changed this rule to allow a juvenile court and a probate court to exercise their exclusive original jurisdiction over a child at the same time. *State ex rel. Allen County Children Servs. Bd. v. Mercer County Court of Common Pleas, Probate Division, et al.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380. In that case, the Court held that a probate court could proceed with an adoption case despite the fact that a juvenile court was already exercising jurisdiction over the child by having awarded temporary custody of the child to the Allen County Children Services Board. Using the logic set forth in that case, the juvenile court had jurisdiction to hear the paternity case although the adoption petition was filed first. The juvenile court proceeded to reach a conclusion that Kaidin was the biological father of H.P., thus setting forth a second status for Kaidin.

{¶6} The facts of this case, as stipulated by the parties and found by the trial court, show that paternity was established prior to the consent hearing.[2] Although the paternity action was not filed before the petition to adopt, R.C. 3111.04 does not

---

[2] This Court notes that no continuances or stays were granted to Kaidin to allow him extra time to have the paternity proceeding completed before the consent hearing on the adoption.

set a time limit for when the action must be filed. Likewise, the Supreme Court of Ohio has not strictly construed the requirement set forth in R.C. 3107.06(B)(3), which states that to be considered a father whose consent is necessary, the paternity must be established prior to the filing of the adoption petition. *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647. Instead, the Court has held that even though the paternity was not established prior to the filing of the petition, it was not "too late for the paternity action to render the man contesting the adoption a 'father'". *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, ¶ 12, 933 N.E.2d 236. In *P.A.C.*, the biological father had filed his complaint for allocation of parental rights in the juvenile court prior to the filing of the adoption petition in the probate court, but it was not finalized, as required by the statute for consent to be necessary. The probate court granted a stay in the adoption proceeding pending the outcome of the juvenile court paternity action. As discussed above, this was done because the juvenile court was already exercising its exclusive original jurisdiction at the time that the petition to adopt was filed to invoke the exclusive original jurisdiction of the probate court. Since juvenile and probate courts can now exercise their exclusive original jurisdiction concurrently, there no longer is a "race to the courthouse" to see which can be filed first. Instead, apparently as a result of the Supreme Court's allowance of two courts to simultaneously exercise jurisdiction over a child, it has become a race to see who can get the judgment completed first.

Case No. 15-21-03

{¶7} This is not to say that there is no logic in allowing the paternity action to proceed without a stay.

> "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa* (1986), [23 Ohio St.3d 163, 164, 492 N.E.2d 140] citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. *Santosky* has been characterized as "requiring a clear and convincing standard for termination of parental rights because the parent's interest is fundamental but the State has no legitimate interest in termination unless the parent is unfit, and finding that the State's interest in finding the best home for the child does not arise until the parent has been found unfit." *Cruzan v. Dir., Missouri Dept. of Health* (1990), 497 U.S. 261, 319, 110 S.Ct. 2841, 111 L.Ed.2d 224 (Brennan, J., dissenting).
>
> "Few consequences of judicial action are so grave as the severance of natural family ties." *Santosky,* 455 U.S. at 787, 102 S.Ct. 1388, 71 L.Ed.2d 599 (Rehnquist, J. dissenting). Because adoption terminates fundamental rights of the natural parents, "we have held that '* * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.'" [*Masa, supra* at 165] quoting *In re Schoeppner* (1976), [46 Ohio St.2d 21, 24, 345 N.E.2d 608]. With "a family association so undeniably important * * * at stake," we approach the case before us "mindful of the gravity" of the circumstances and the long-term impact on all the concerned parties. *M.L.B. v. S.L.J.* (1996), 519 U.S. 102, 117, 117 S.Ct. 555, 136 L.Ed.2d 473.

*P.A.C. supra* at ¶ 5-6. Likewise, this Court has previously held that we must strictly construe the language in the adoption statutes to protect the interests of the nonconsenting parent who may be subjected to the loss of his or her parental rights. *In re Adoption of S.S.*, 3d Dist. Van Wert No. 15-17-06, 2017-Ohio-8956, ¶ 18, 101 N.E.3d 527.

{¶8} The trial court correctly considered whether Kaidin's consent as a putative father was required and determined that, pursuant to the statute, it was not. However, as Kaidin had obtained a determination of paternity prior to the consent hearing, he also had the status as the legal father with all of the rights and responsibilities that entails. That includes the right to have the trial court determine whether his consent is necessary pursuant to R.C. 3107.07(A). This question was not considered by the trial court. This matter must be remanded for the trial court for such consideration. Thus, the trial court erred by finding Kaidin's consent was not necessary solely because of his status as a putative father and the first assignment of error is sustained.

{¶9} Kaidin alleges in the second assignment of error that the trial court erred in denying his motion to intervene because he failed to register as a putative father. As discussed above, Kaidin has a second status as legal father based upon the judicial determination of paternity by the juvenile court. As the legal father, Kaidin is entitled to be a part of the proceedings. Thus, the trial court erred in denying the motion to intervene. The second assignment of error is sustained.

{¶10} In the third and fourth assignments of error, Kaidin alleges that the statutes at issue in this case were unconstitutional as applied. Based upon our holdings in the first two assignments of error, the third and fourth assignments of error are rendered moot. App.R. 12(A)(1)(c). This court thus issues no opinion on them.

{¶11} Having found error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Van Wert County, Probate Division, is reversed and the matter is remanded for further proceedings in accord with this opinion.

*Judgment Reversed*
*And Cause Remanded*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**