NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4369

IN RE ADOPTION OF H.P.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of H.P.*, Slip Opinion No. 2022-Ohio-4369.]**

*Adoption law—R.C. Chapter 3107—Putative-father registry—Biological father did not take steps necessary under Ohio's adoption statutes to preserve his right to object to child's adoption—Court of appeals' judgment reversed and cause remanded to court of appeals.*

(No. 2022-0159—Submitted July 13, 2022—Decided December 8, 2022.)

APPEAL from the Court of Appeals for Van Wert County,

No. 15-21-03, 2021-Ohio-4567.

_____

**BRUNNER, J.**

{¶ 1} Since establishing a putative-father registry in 1996, Ohio has clearly warned putative fathers that "[a] man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section

3107.07 of the Revised Code,"[1] R.C. 3107.061. *See also* Am.Sub.H.B. No. 419, 146 Ohio Laws, Part III, 4660, 4692 (establishing Ohio's putative-father registry through the enactment of R.C. 3107.062).

{¶ 2} Registering as a putative father is not the only means by which a purported father can protect his right for his consent to an adoption to be necessary, but it is certainly the simplest. By completing a form online or by submitting the form by email, regular mail, or in person to an Ohio Department of Job and Family Services office, a putative father can ensure that he receives notice of any adoption proceedings involving a child that he believes he has fathered. *See* Ohio Department of Job and Family Services, Putative Father Registry, https://jfs.ohio.gov/pfr/index.stm (accessed Dec. 1, 2022) [https://perma.cc/ZHC9-LJ9K]. Registration can be done at no cost to the putative father, and it requires no involvement by the mother. *See id.*; R.C. 3107.062. However, failure to register or to take other required steps in the time and manner prescribed by Ohio's adoption statutes will result in the father's having no say should another person step forward to adopt the child.

{¶ 3} Ohio's adoption laws reflect the legislature's careful balancing of rights, through specific procedures, to further the best interests of children. *In re Adoption of Zschach*, 75 Ohio St.3d 648, 651, 665 N.E.2d 1070 (1996).

---

1. R.C. 3107.07 provides that the consent of the putative father of a minor to the minor's adoption is not required if either of the following applies:

> (1) The putative father fails to register as the minor's putative father with the putative father registry established under section 3107.062 of the Revised Code not later than fifteen days after the minor's birth;
> (2) The court finds, after proper service of notice and hearing, that any of the following are the case:
> (a) The putative father is not the father of the minor;
> (b) The putative father has willfully abandoned or failed to care for and support the minor;
> (c) The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.

Importantly, when a child needs a stable family environment and adoption is necessary to meet that need, the statutes require an adoption to proceed expeditiously. *Id.* And while we have held that any exception to the consent requirements for adoption must be construed in favor of protecting a natural parent's right to parent his or her child, *see In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 23, when the language of a statute is clear, as it is here, we apply the statute as written, *see Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, 179 N.E.3d 1169, ¶ 13.

{¶ 4} In this matter, appellee, K.W., a biological father, wanted to parent his child but he did not take the appropriate steps under Ohio's adoption laws to preserve his right to do so. We therefore reverse the judgment of the Third District Court of Appeals and remand the matter to the court of appeals for it to consider K.W.'s third and fourth assignments of error raised in that court, which it determined were moot, 2021-Ohio-4567, ¶ 10-11.

## I. FACTS

### A. *The adoption proceeding*

{¶ 5} Appellants N.P. and J.P., a married couple,[2] filed a petition for legal adoption of H.P., K.W.'s biological child, in the Van Wert County Probate Court (hereafter, "the probate court") on September 3, 2020, when H.P. was just three days old. Appellant J.D. was 17 years old when she gave birth to H.P. J.D. planned for H.P.'s adoption and executed the necessary consent forms that were filed with the adoption petition.

{¶ 6} N.P. and J.P. informed the probate court on the adoption application that they did not believe that the consent of H.P.'s biological father would be required. N.P. and J.P. notified the court at the time of the application that a putative father might still come forward and had until 15 days after H.P.'s birth to

---

2. "A husband and wife together," R.C. 3107.03(A), may adopt a minor child, R.C. 3107.02.

do so. However, they believed that any putative father's consent would not be required under Ohio law, due to willful abandonment of J.D. during her pregnancy and failure to support her and the child. Later, N.P. and J.P. filed in the probate court a certificate indicating that no putative father of the child had registered with the Ohio Putative Father Registry as of September 16, 2020.

{¶ 7} On September 17, 2020, 18-year-old K.W., believing he was the father of H.P., filed an action in the Logan County Juvenile Court seeking custody and genetic paternity testing of H.P. On September 23, 2020, K.W. filed an objection to the adoption in the Van Wert County probate court, informing the court that he believed he was H.P.'s biological father and arguing that J.D. knew he was the father and that he did not agree with her plan to place H.P. for adoption. He did not inform the probate court at that time of the juvenile-court custody proceeding, and he did not request that the probate court stay the adoption proceeding. N.P. and J.P. filed a motion to strike K.W.'s objection on the ground that K.W. was not entitled to object because he did not timely register as a putative father.

{¶ 8} The probate court scheduled a hearing on K.W.'s objection (hereafter, the "consent hearing"), which was held on January 29, 2021. One day prior to that hearing, K.W. filed a motion to intervene in the adoption proceeding and an additional objection asserting that he was "the biological father of the subject minor child by Judgment Entry of the Logan County, Ohio Juvenile Court dated January 21, 2021." K.W. did not submit a copy of the juvenile court's entry or a request to stay the adoption proceeding.

{¶ 9} K.W. had requested in December 2020 that the probate court "establish paternity." But on January 21, 2021, he asked the probate court to dismiss that request, noting that a Logan County administrative or juvenile-court order was "forthcoming" that would "establish[] [him] as the natural and biological father." K.W. attached to that request a copy of a genetic-testing report and an administrative order of the Logan County Child Support Enforcement Agency.

{¶ 10} N.P. and J.P. asked the probate court to strike the attachments because, in their view, they were unauthenticated and irrelevant to K.W.'s voluntary dismissal of his request to establish paternity. On January 25, 2021, the probate court issued a judgment entry accepting the dismissal of K.W.'s request and noting that "the probate court does not have jurisdiction over paternity proceedings."

{¶ 11} At the consent hearing, K.W. testified that he found out about J.D.'s pregnancy in February 2020. K.W. stated that he told J.D. at that time that he wanted to "be in [his] kid's life" and that he did not agree with her decision to proceed with an adoption. K.W. testified that he maintained communication with J.D. until just before H.P.'s birth, when his then-attorney advised him to "give [J.D. and her family] some space and not text them until the kid was born."

{¶ 12} K.W. testified at the consent hearing that he also followed the advice of his former attorney to wait until the child was born to register with the Ohio Putative Father Registry. K.W. said that he knew that J.D. was due to give birth on September 5, 2020, but he explained that he did not find out about H.P.'s birth until September 16, 2020—one day past the deadline for registering as a putative father. K.W. testified that had he known the rules or known sooner that H.P. had been born, he would have registered before September 16.

{¶ 13} At the conclusion of the consent hearing, the attorneys and the probate-court judge engaged in a discussion about whether K.W. fell within the definition of "putative father" under R.C. 3107.01(H), which is

> a man, including one under the age eighteen, who may be a child's father and to whom all of the following apply:
>
> (1) He is not married to the child's mother at the time of the child's conception or birth;
>
> (2) He has not adopted the child;

(3) He has not been determined, prior to the date a petition to adopt the child is filed, to have a parent and child relationship with the child by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative agency proceeding in another state;

(4) He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code.

Counsel for the parties agreed that K.W. met the definition of "putative father."

{¶ 14} The parties also agreed that the Logan County juvenile court had issued the January 21, 2021 judgment entry setting forth the genetic-testing results, which concluded that K.W. was the biological father of H.P. In his written closing arguments, K.W. asserted that he had taken sufficient steps to protect his right to parent H.P., even though he had failed to timely register as a putative father. He asked the probate court to allow him to intervene in the adoption matter and to sustain his objection to the adoption, but he did not point to any specific binding authority to support his position that the adoption could not proceed without his consent.

{¶ 15} The probate court issued its decision on March 9, 2021. It determined that under R.C. 3107.07(B), the adoption could proceed without K.W.'s consent because K.W. had failed to register with the putative-father registry not later than 15 days after H.P.'s birth. *See* R.C. 3107.07(B)(1). The probate court found that K.W. "could have registered on the Ohio Putative Father Registry anytime from when he became romantically involved with [J.D.] until 15 days after the birth of the child on August 31, 2020," and that had he done so, his rights would have been protected. The probate court sympathized with K.W. but found that the

6

legislature's deadline under R.C. 3107.07(B) promoted the goal of giving certainty to families who want to adopt a child. K.W. appealed the probate court's judgment to the Third District.

### B. The appeal

{¶ 16} On appeal, K.W. refined his arguments. He asserted that the probate court had erred in finding that his consent to the adoption was not required under R.C. 3107.07(B), which applies only to putative fathers, because at the time of the consent hearing, he was H.P.'s legal father. K.W. also argued that the probate court was required to "yield" to the Logan County juvenile court's finding that K.W. is H.P.'s father, citing *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, for the proposition that an adoption should not proceed in a probate court when a parenting action regarding the child is pending in a juvenile court. K.W. argued that once he filed his custody case in the juvenile court, the probate court was required to stay the adoption proceeding.

{¶ 17} J.D., N.P., and J.P. filed a joint brief in the court of appeals, arguing that K.W. had not established his right to withhold his consent to the adoption as either a legal father or a putative father. They argued that K.W.'s reliance on *Pushcar* and its progeny was erroneous because those decisions require a probate court to stay an adoption proceeding only when a paternity action has been filed in a juvenile court *prior to* the filing of the adoption petition.

{¶ 18} The Third District held that there was no question that K.W. was a putative father at the time the adoption petition was filed and that he had not registered with the putative-father registry within 15 days after H.P.'s birth. 2021-Ohio-4567 at ¶ 4. The appellate court held that the probate court was therefore correct in determining that K.W.'s consent to the adoption was not necessary as a mere putative father. *Id.* at ¶ 5. But it held that K.W. had a "second status" as the biological father of H.P. *Id.* It determined that the probate court should have considered whether K.W.'s consent—"as the legal father with all of the rights and

responsibilities that entails"—was necessary under R.C. 3107.07(A). 2021-Ohio-4567 at ¶ 8. The appellate court remanded the matter to the probate court for it to conduct that analysis. *Id.* at ¶ 11.

{¶ 19} We accepted J.D.'s appeal and the appeal filed by N.P. and J.P. for discretionary review. *See* 166 Ohio St.3d 1467, 2022-Ohio-1163, 185 N.E.3d 106.

## II. ANALYSIS

{¶ 20} In Ohio, "a petition to adopt a minor may be granted only if written consent to the adoption has been executed" by the persons whose consent is required under the adoption statutes. R.C. 3107.06; *see also* R.C. 3107.07. The mother of the child, the father of the child (by way of marriage, adoption, or court or administrative determination), or a putative father are presumed to have the right to withhold consent to an adoption under R.C. 3107.06(A) through (C). A party may overcome this presumption by establishing that an exception under R.C. 3107.07 to the consent requirement applies. *See In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 32 (determining that the party invoking an exception to the parental-consent requirement carries the burden of establishing the exception by clear and convincing evidence). The exceptions that may apply to a parent are set forth in R.C. 3107.07(A) and are different from those that may apply to a putative father under R.C. 3107.07(B). The parties have agreed that K.W. was a putative father.

{¶ 21} Under R.C. 3107.07(B)(1), a putative father's consent to an adoption is not required if he failed to register with the Ohio Putative Father Registry later than 15 days after the child's birth. It is undisputed that K.W. failed to register within the required time, and his argument that the probate court could not determine his "status" for consent purposes until the consent hearing is without merit. Although a hearing might be required for adoption petitioners to demonstrate any exceptions to the consent requirement under R.C. 3107.07(B)(2), no hearing is necessary to determine whether a putative father has properly registered. N.P. and

J.P. needed only to submit proof that a proper search of the putative-father registry had been performed, which they did. *See* R.C. 3107.064(A); R.C. 3107.063(A) (upon request, the "department [of job and family services] shall search the registry" and "[i]f the department determines that a man is registered as the minor's putative father," it shall provide "a certified copy of the man's registration form * * * [or, if] the department determines that no man is registered as the minor's putative father, it shall provide * * * a certified written statement to that effect").

{¶ 22} At the time that N.P. and J.P. filed the adoption petition, the 15-day-postbirth window for any man to register as H.P.'s putative father had not expired. So the probate court was not able to determine whether a putative father whose consent was required existed at the time the petition was filed. Therefore, based on the facts before us, N.P. and J.P.'s argument that the probate court's consent determination should have been made based on the time that the adoption petition was filed cannot be sustained.

{¶ 23} However, once the 15-day window expired and N.P. and J.P. filed the certificate showing that no one had registered as H.P.'s putative father, K.W. had no right to object to the adoption. At that point, K.W. did not have a right to receive notice that the adoption petition had been filed, *see* R.C. 3107.11(A)(1), let alone a right to object to it, and K.W.'s legal endeavor to be a parent to H.P. came to an end, *see* R.C. 3107.07(B)(1); *In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, ¶ 19 (explaining that failure to satisfy any one of the statutory conditions "brings the putative-father process to an end").

{¶ 24} K.W. argues that even if he did not have the right as a putative father to object to the adoption of H.P., he had a right to object as H.P.'s biological father. We disagree.

## A. *K.W. could not be a legal father to H.P. under the plain language of the applicable statutes*

{¶ 25} According to K.W., even if his consent were not required as a putative father, by the time the probate court conducted the consent hearing, he was no longer a putative father but was, rather, a legal father for consent purposes. The court of appeals agreed, holding that "at the time of the hearing, [K.W.] had a second status, that of a biological father whose paternity had been judicially determined." 2021-Ohio-4567 at ¶ 5.

{¶ 26} To be clear, the record does not contain a judicial determination that K.W. is H.P.'s biological father. There is a stipulation in the probate-court record that genetic-testing results concluded that K.W. is H.P.'s biological father. The genetic-testing results that K.W. filed in the probate court were submitted with an order of an administrative agency establishing K.W.'s paternity, but neither is a judicial determination. The probate court accepted the parties' stipulation, but the probate court did not have jurisdiction to establish paternity, *see* R.C. 3111.06, and there is no other entry in the record before us establishing that K.W. is H.P.'s biological father. Regardless, the genetic-testing results are of no consequence, because they were obtained *after* the adoption petition had been filed.

{¶ 27} In addition to registering as a putative father, K.W. could have protected his right for his consent to the adoption to be necessary by initiating an administrative or court proceeding under R.C. Chapter 3111 to establish his legal rights to parent H.P. *See* R.C. 3107.06(B)(3). He could have done this at any time, even prior to the child's birth. *See* R.C. 3111.04(C). However, for purposes of preserving his right that his consent to any adoption be necessary, K.W. was required to take these steps "prior to the date the [adoption] petition was filed," R.C. 3107.06(B)(3).

{¶ 28} To be considered a father whose consent is presumed to be required under R.C. 3107.06(B), any one of the following must apply: (1) the child was

conceived or born while the father was married to the mother, (2) the father has legally adopted the child, (3) the father's parent-and-child relationship has been established through a court or administrative proceeding prior to the date the adoption petition was filed, or (4) the father has acknowledged paternity by filing an affidavit with the appropriate agency. R.C. 3107.06(B). These provisions are reinforced by the definition of "putative father" in R.C. 3107.01(H), which reiterates the provisions. Thus, when K.W. said that he was a putative father, he implicitly agreed that under the putative-father-registration provisions, he was also not the legal father—he agreed that he was not married to J.D. when H.P. was conceived, that he had not adopted H.P., that he had not filed a paternity acknowledgement, and that he had not taken the steps necessary to establish his parent-and-child relationship with H.P. prior to the date that the petition to adopt H.P. was filed. K.W. could not be considered a father to H.P. under the plain language of the statutes.

{¶ 29} To process an adoption expeditiously, a probate court must be able to determine whose consent to the adoption is required at the earliest point possible in the proceeding. To permit a purported father to change his status for consent purposes as K.W. suggests would not only ignore the time limitations set forth in the relevant statutes, *see* R.C. 3107.062 and 3107.07(B)(1), but also "would leave the rights of the parties to a pending adoption in a state of uncertainty and would impede the adoption process that had already begun," *H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, at ¶ 30.

{¶ 30} We have envisioned the possibility that a father might revive his right for his consent to an adoption to be necessary by establishing his paternity after he has failed to timely register as a putative father. *See id.* at ¶ 19. Here, the court of appeals relied on our statement in *H.N.R.* to that effect. *See* 2021-Ohio-4567 at ¶ 5. But the court of appeals erred in interpreting that statement to mean that a rights-reviving paternity action could occur after an adoption proceeding was

already underway. The child in *H.N.R.* was four months old at the time the adoption petition was filed. *See H.N.R.* at ¶ 3-4. So the father in *H.N.R.* had time to file his paternity action after the deadline to register as a putative father had passed and before the adoption petition was filed. The father failed to do so, and while we were sympathetic to his situation, we noted that the father had not taken sufficient steps to protect his right to object to an adoption. *Id.* at ¶ 36-37.

{¶ 31} In fact, K.W.'s circumstances mirror those of the father in *H.N.R.* The father in *H.N.R.* had obtained genetic-testing results concluding that he was the father of H.N.R., but he failed to timely register with the putative-father registry. *Id.* at ¶ 3-4. Like K.W., the father in *H.N.R.* sought custody of the child but not until *after* the petition for adoption had been filed. *See id.* at ¶ 6. And as in this case, the probate court in *H.N.R.* determined that the father's consent was unnecessary because he had made no effort to protect that right until after the petition for adoption had been filed. *See id.* at ¶ 12.

{¶ 32} We see nothing in the statutes or our precedent that gave K.W. an additional opportunity to contest H.P.'s adoption by attempting to become a legal father after the adoption proceeding had begun.

### B. **Pushcar** *and its progeny are inapplicable*

{¶ 33} K.W. argues that our decision in *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, required the probate court to stay the adoption proceeding once K.W. filed his action in the Logan County juvenile court. We acknowledge that the syllabus in *Pushcar* states: "When an issue concerning parenting[3] of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." But we have never applied that

---

3. We have since limited "an issue concerning parenting," *Pushcar* at syllabus, to questions concerning parentage, i.e., *paternity*. *See, e.g.*, *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas, Probate Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380, ¶ 38, citing *In re G.T.B.*, 128 Ohio St.3d 502, 2011-Ohio-1789, 947 N.E.2d 166, ¶ 10, fn. 2.

principle to require the stay of an adoption proceeding when the juvenile-court proceeding was initiated *after* the filing of the adoption petition. *See, e.g.*, *In re A.R.W.*, 4th Dist. Washington Nos. 21CA19 and 22CA7, 2022-Ohio-2874, ¶ 44-45.

{¶ 34} We find other problems with K.W.'s argument. K.W. never asked the probate court to stay the adoption proceeding, and the record does not show that he ever provided the probate court with a case number or copies of pleadings from the juvenile-court matter. He also withdrew his request to establish paternity in the probate court, agreed that he met the definition of "putative father" under R.C. 3107.01(H), and never asked the probate court to consider whether his consent was required as a legal father. There was simply no reason for the probate court to issue a stay.

{¶ 35} The court of appeals also relied on *Pushcar*, and several cases that followed it, in determining that K.W. could establish his paternity for consent purposes after the filing of the adoption petition. 2021-Ohio-4567 at ¶ 6-7. But we have never extended the holding in *Pushcar* to require a probate court to stay adoption proceedings after they have begun. In fact, in *Pushcar*, we upheld " 'the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.' " *Id.* at ¶ 10, quoting *In re Adoption of Asente*, 90 Ohio St.3d 91, 92, 734 N.E.2d 1224 (2000). Further, we have limited *Pushcar* and its progeny to require a probate court to refrain from proceeding with an adoption only when an issue of parentage pending in another court "affect[s] the probate court's *ability* to rule on the concurrent adoption petitions." (Emphasis sic.) *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 35.

{¶ 36} The probate court had jurisdiction over H.P.'s adoption proceeding and was authorized to make its determination that K.W.'s consent was not required before K.W. filed anything in the juvenile court. The probate court did not need

any information beyond the certificate showing that no putative father had timely registered. Likewise, there was nothing to prevent the juvenile court from proceeding with the paternity determination, but under R.C. 3107.01(H) and 3107.06(B)(3), that determination was inconsequential to the adoption proceeding because the determination was not requested prior to the date that the adoption petition was filed.

{¶ 37} The court of appeals' application of *Pushcar* to the facts of this case has the effect of removing or ignoring the statutory language "prior to the date the petition was filed" from R.C. 3107.06(B)(3). No court can do that. Moreover, that language is critical to the effective functioning of the adoption statutes, and it obviously has significant meaning, as it draws a bright line between when a parent's consent to adoption is required and when it is not. The legislature could have specified a different time within which a putative father might establish paternity under R.C. 3107.01(H) or 3107.06(B)(3), but it specifically used the words "prior to the date" regarding the filing of the adoption petition in both provisions. We must give that language the effect it was intended.

### III. CONCLUSION

{¶ 38} Because K.W. failed to timely register as a putative father or to establish his paternity prior to the filing of the petition to adopt H.P., his consent to H.P.'s adoption was not required. We reverse the judgment of the Third District Court of Appeals and remand the matter to the court of appeals for it to consider K.W.'s third and fourth assignments of error raised in that court, which the court determined were moot, 2021-Ohio-4567 at ¶ 10-11.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., concurs in judgment only.

_____

Hunt & Johnson, L.L.C., Jerry M. Johnson, and Christine M. Bollinger, for appellants N.P. and J.P.

Huffman, Kelley & Brock, L.L.C., and John C. Huffman, for appellant J.D.

Schulze, Cox & Will and Faye D. Cox, for appellee.

Susan Garner Eisenman, urging reversal for amicus curiae Ohio Adoption Law Roundtable.

A. Patrick Hamilton, urging reversal for amicus curiae Ad Hoc Committee of Private Placing Adoption Agencies.

Julia A. Cain, urging reversal for amicus curiae Academy of Adoption and Assisted Reproduction Attorneys.

_____