[Cite as *In re Adoption of Z.D.W.*, 2025-Ohio-2465.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF Z.D.W., A MINOR | : | |
| | : | C.A. No. 30380 |
| | : | |
| | : | Trial Court Case No. 2024 ADP 00066 |
| | : | |
| | : | (Appeal from Common Pleas Court- Probate Division) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 11, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

Epley, P.J.; Tucker, J.; and Hanseman, J., concur.


For the court,


[[Applied Signature]]
ROBERT G. HANSEMAN, JUDGE

**OPINION**
MONTGOMERY C.A. No. 30380

JENNIFER E. MARIETTA, Attorney for Appellant
MITCHELL A. STOWERS, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant, R.T., appeals from a probate court judgment finding that R.T., as a putative father, did not need to consent to the adoption of Z.W.D., a minor child. According to R.T., the court erred in finding his consent unnecessary. For the reasons that follow, we agree that R.T.'s consent was not required under R.C. 3107.07(B)(1) because he had not timely registered with the putative father registry or taken other steps judicially or administratively to establish paternity before the adoption petition was filed.

{¶ 2} The probate court alternatively found that R.T.'s consent was not required under R.C. 3107.07(A) because R.T. had not had de minimis contact with or supported the minor child who was being adopted. R.T. did not object in the trial court to the fact that the adoption petition alleged lack of consent under R.C. 3107.07(A) rather than R.C. 3107.07(B). Because R.T. failed to object to the petition in the trial court, this issue is reviewed for plain error only. The court's alternative analysis was incorrect because R.T. was only a putative father and did not qualify as a parent for purposes of R.C. 3107.07(A). However, the error did not affect the outcome and did not cause a manifest miscarriage of justice. R.T. was aware before the hearing that failure to register was an issue, and the matter was litigated during the hearing. In addition, the court properly applied R.C. 3107.07(B)(1). The court also acknowledged in its decision that R.T.'s failure to register was fatal and that it did not need to address any other issues. The court's additional comments about R.C. 3107.07(A), therefore, were dicta and had no impact. Accordingly, the judgment of the trial court will be

affirmed.

## I. Facts and Course of Proceedings

{¶ 3} On May 21, 2024, C.W. filed a petition in the probate court seeking, as a stepparent, to adopt Z.D.W., who was born in May 2017. According to the petition, C.W. had been married to the child's mother ("Mother") since February 2017, and the child had lived with both C.W. and Mother since birth. The petition listed R.T. as a person whose consent was not required and alleged that R.T. had failed without justifiable cause to have more than de minimis contact with the child or to provide for the child's maintenance and support for at least one year preceding the petition's filing or the minor's placement in C.W.'s home. Mother consented to the adoption and waived notice of the hearing on the petition. C.W. also filed an affidavit stating, among other things, that she had no information regarding any custody hearing about the child pending in Ohio or any other state. Notice of the pending proceedings was sent to R.T. at the Mansfield Correctional Institution. The court set a hearing on the petition for September 27, 2024.

{¶ 4} On June 6, 2024, R.T. filed a pro se request to challenge the adoption, claiming that he had not learned of the child's birth until January 2024, that Mother and C.W. had planned to hide the child from him (the only possible father), and that he had made multiple attempts to establish contact with the child but was denied. Shortly thereafter, counsel from the Public Defender's Office filed a notice of appearance and an objection to the petition. In June 2024, the court set a hearing for October 8 to decide if R.T.'s consent was necessary and ordered R.T. to be conveyed from prison for the hearing. The hearing was ultimately held on January 21, 2025.

{¶ 5} After the hearing, the court overruled R.T.'s objections and found his consent was unnecessary. Decision, Order, and Entry Overruling Objections and Finding that

Consent of Father Is Not Necessary (Jan. 22, 2025) ("Order"). R.T. timely appealed from the court's decision.

## II. Issue of Consent

{¶ 6} R.T. has asserted one assignment of error, with three subparts. We will consider the argument as a whole, while addressing the subparts individually if needed. R.T.'s assignment of error states that:

> The Court Erred When It Found that Father's Consent Is Not Required for Adoption.

{¶ 7} Under this assignment of error, R.T. first argues that he has standing to challenge the adoption because the putative father registry does not apply here. According to R.T., the adoption petition did not plead that he was a putative father who had failed to register, C.W. did not attach a copy of an Ohio Department of Job and Family Services (ODJFS) Form to her petition as required, and C.W. cited the circumstances in R.C. 3107.07(A) in her petition. R.T. therefore contends that C.W. admitted he was the "natural father" of Z.D.W., and his standing is not in dispute.

{¶ 8} In finding that R.T.'s consent to the adoption was not required, the trial court made these findings: (1) R.T. had not registered with the putative father registry, and his consent was not required under R.C. 3107.07(B)(1); and (2) R.T. failed to have more than de minimis contact with the minor child or to provide support for her. Order at p. 6-13.

{¶ 9} "Adoption is governed by R.C. Chapter 3107. In order to adopt a child in Ohio, the consent of certain parties might be required, including (1) a father who was married to the mother at the time of the conception or birth of the child, (2) a father who has established legal paternity through a court action, (3) a father who has established legal paternity through administrative proceedings, (4) a father who has established legal paternity by processing

an acknowledgement of paternity, signed by both the father and mother, and (5) under certain conditions, a putative father." *In re Adoption of H.N.R.*, 2015-Ohio-5476, ¶ 16, citing R.C. 3107.06(B) and (C). "A putative father is simply a man who might be a child's biological father but who has no legal relationship with the child through marriage to the mother or the establishment of legal paternity." *Id.*, citing R.C. 3107.01(H) [now (S), per amendments in Sub. H.B. 5, 2024 Ohio Laws 60, eff. Mar. 20, 2025 ("H.B. 5"].

{¶ 10} Contrary to R.T.'s claims, he is, at most, a putative father. R.T. met Mother in 2016, did not have a relationship with her, and had sexual intercourse with her one time. He was married at the time, thought it was a "one-night stand," and moved on. R.T. was jailed in 2017 and sent to prison in 2018, where he remained until December 25, 2024. R.T. was unaware Mother had given birth in May 2017. However, at some point in January 2024, R.T. received a letter in prison that was purportedly from Mother's father, M.M. (through whom R.T. had originally met Mother). R.T. did not believe that M.M. had sent the letter, however, because M.M.'s name was misspelled. The letter informed R.T. that Mother had a child and that Mother and C.W. planned to never tell R.T. about the child. R.T. then obtained Mother's phone number and called her in February 2024 to express a desire to be involved in Z.D.W.'s life. Mother said she would talk to C.W. about it, but when R.T. called back the following week, Mother told him not to contact her again and blocked his number. Transcript of Proceedings (Consent Hearing) ("Tr."), 31-35, 39, and 45.

{¶ 11} After receiving paperwork about the adoption petition in May 2024, R.T. filed an objection in probate court in June, as noted. R.T. had never registered with the putative father registry or made any attempt to attain or acknowledge paternity through the courts or administratively before the adoption petition was filed. R.T. never contacted Z.D.W. in any way in the year before the petition was filed (or at any time before or after that period), and

never sent her any money, clothes, food, or any kind of maintenance or support. *Id*. at 7-8, 9, 17, 18-19, 36, 43, 49, 50, and 52.

{¶ 12} Under R.C. 3107.07(B)(1), a putative father's consent to adoption is not required if "[t]he putative father fails to register as the minor's putative father with the Ohio putative father registry established under section 3107.062 of the Revised Code in accordance with rule 5101:2-48-02 of the Ohio Administrative Code, not later than fifteen days after the minor's birth."[1] "Registering as a putative father is relatively simple. At the time he engages in sexual intercourse, a man is considered to be on notice of the potential biological and ensuing legal consequences of that intercourse. R.C. 3107.061. From that point forward, he can register as a putative father by filling out a short form on a webpage maintained by ODJFS or by mailing the same information to ODJFS." *H.N.R.*, 2015-Ohio-5476, at ¶ 17, citing Adm.Code 5101:2-48-02(C).

{¶ 13} While a father has other means of securing the right to receive notice of the filing of an adoption petition and the right to withhold consent if he files court or administrative paternity proceedings, if he does not do so, "a man's failure to timely register in the [putative father registry] precludes him from receiving notice and an opportunity to prove that his consent as a mere putative father should be required for a child's adoption." *H.N.R.* at ¶ 19, citing R.C. 3107.07(B)(1) and R.C. 3107.11(A)(1). The Supreme Court of Ohio has taken a strict position on the registration requirement.

{¶ 14} In *H.N.R.*, the father's name was not on the birth certificate, but he had a DNA test shortly after the child's birth that identified him as the father. However, the father failed

---

[1] This is the current version of the statute, which was amended in 2025 by H.B. 5. The only change in subdivision (B)(1) was the addition of the word "Ohio" and a specific reference to Adm.Code 5101:2-48-02. This is the same regulation the supreme court cited in *H.N.R.*, 2015-Ohio-5476, at ¶ 17.

to register with the putative father registry within 30 days, which was the deadline at the time. The father had spent some time every few weeks with the child for the first four months, but for the next two months, he had no contact because the mother would not answer the door. She also allegedly told him the child was dead. *Id*. at ¶ 3 and 10. About five months after the child was born, the mother permanently surrendered the child to an adoption agency, and adoptive parents then filed a petition to adopt the child. Two months later, the father filed custody complaints in two juvenile courts and moved to intervene in the adoption proceedings as a necessary party. *Id*. at ¶ 5-6.

{¶ 15} However, the probate court denied the father's request for relief and ordered the adoption proceedings to proceed without his participation. This was based on the father's failure to register with the putative father registry and the fact that he had failed to timely pursue the various avenues for establishing a parent-child relationship, i.e., his custody actions were filed after the adoption petition was filed. *Id.* at ¶ 12. After the court of appeals affirmed, the father appealed to the Supreme Court of Ohio, raising an "as applied" due process challenge. Specifically, he argued the 30-day post-birth deadline was arbitrary as to his particular circumstances. *Id*. at ¶ 20-21. The court rejected that argument, finding there was no potential prejudice because the father "admittedly took no action to preserve his rights or even ascertain the legal mechanisms that were available until after the filing of the adoption petition." *Id*. at ¶ 36.

{¶ 16} In a later decision, the Supreme Court of Ohio reiterated its position, stressing that "[r]egistering as a putative father is not the only means by which a purported father can protect his right for his consent to an adoption to be necessary, but it is certainly the simplest. By completing a form online or by submitting the form by email, regular mail, or in person to an Ohio Department of Job and Family Services office, a putative father can ensure that he

receives notice of any adoption proceedings involving a child that he believes he has fathered. . . . However, failure to register or to take other required steps in the time and manner prescribed by Ohio's adoption statutes will result in the father's having no say should another person step forward to adopt the child." (Citations omitted.) *In re Adoption of H.P.*, 2022-Ohio-4369, ¶ 2.

{¶ 17} After the adoption petition in *H.P.* was filed in the probate court, the father filed an action seeking custody and for paternity testing of the child in the juvenile court and also filed an objection in the adoption case. The father then moved to intervene in the adoption case. *Id*. at ¶ 6-7. While the father in *H.P.* had known about the pregnancy months before the child was born and also had known about the registry, he did not find out about the birth until the day after the registration deadline (which had been shortened to 15 days by that time). *Id*. at ¶ 11-12 and 15. Nonetheless, as in *H.N.R.*, the probate court found the father did not have the right to object to the adoption because he had failed to timely file with the registry. *Id*. at ¶ 15.

{¶ 18} The Supreme Court of Ohio agreed, again emphasizing that "once the 15-day window closed" and the prospective adoptive parents "filed the certificate showing that no one had registered as [the child's] putative father, the father had no right to object to the adoption." *Id*. at ¶ 23. This ties into R.T.'s comment about the fact that C.W. failed to file the ODJFS certificate with the petition, as required. Appellant's Brief, p. 11.

{¶ 19} *In H.P.*, the court referred to submission of proper proof that a registry search had been done. *Id*. at ¶ 21, citing R.C. 3107.063(A) and R.C. 3107.064(A). The first statute refers to the ability of various people to ask ODJFS to search the putative father registry and determine if a man is registered as a minor's putative father. If ODJFS determines someone is registered, it must provide a certified copy of the registration form. However, If ODJFS

finds no man is registered, it will provide a certified statement to that effect. Admittedly, no certified statement was filed with the court in the case before us.

{¶ 20} R.C. 3107.064(A) states, with exceptions that do not apply here, that "a court shall not issue a final decree of adoption or finalize an interlocutory order of adoption unless the mother placing the minor for adoption or the agency or attorney arranging the adoption files with the court a certified document provided by the department of job and family services under section 3107.063 of the Revised Code." This is reiterated in the administrative regulation, which provides that "[t]he agency or attorney arranging the adoption shall file the response received from the Ohio putative father registry's office with the court prior to the issuance of the final adoption decree or the interlocutory order of adoption." Adm.Code 5180:2-48-02(I). An "interlocutory order of adoption" is one "that automatically becomes a final decree of adoption on a date specified in the order." R.C. 3107.14(C).

{¶ 21} What this means for the case before us is that the probate court cannot issue the final adoption decree for Z.D.W. until the certificate is filed; it does not mean the court's decision on the consent matter was incorrect. *See In re Adoption of E.E.R.K.*, 2014-Ohio-1276, ¶ 11 (2d Dist.) ("[p]ursuant to the express language in R.C. 3107.064, the statute only applies when the trial court has issued a final decree of adoption, or in the event the court finalizes an interlocutory order of adoption"). The probate order involved here was neither a final adoption decree nor an interlocutory order of adoption. First, the court did not include provisions in the order indicating it was an interlocutory order of adoption that would automatically become final on a certain date. The decision was simply about whether R.T.'s consent was required. In addition, before issuing a final decree, the probate court must consider whether an adoption is in the minor child's best interest. *See* R.C. 3107.14(C). The

probate court also did not consider that issue in its consent order. Finally, R.C. 3107.05 outlines various items and information that must be included when an adoption petition is filed; it does not mention the ODJFS certificate.

{¶ 22} Consequently, the lack of a filed certificate does not preclude courts from finding that a particular litigant, such as R.T., failed to timely register with the putative father registry and that his consent is not required. That fact was also undisputed here, as R.T. stated several times that he had never heard of the putative father registry. Tr. at 37-38 and 40.

{¶ 23} A further argument that R.T. asserts is that C.W.'s adoption petition failed to raise his lack of consent under R.C. 3107.07(B) but instead referenced the criteria in R.C. 3107.07(A). However, R.T. failed to raise this alleged error in the trial court. When parties fail to object in the trial court, they have waived the matter in question. Despite the waiver, we may still consider the issue for plain error. *In re L.C.C.*, 2018-Ohio-4617, ¶ 23 (10th Dist.). "To invoke the plain error doctrine, the party claiming error must establish: (1) that an error, i.e., a deviation from a legal rule, occurred; (2) that the error was an 'obvious' defect in the trial proceedings; and (3) that this obvious error affected substantial rights, i.e., the error must have affected the outcome of the trial." *Id.*, quoting *State v. Morgan*, 2017-Ohio-7565, ¶ 40 [actually quoting ¶ 41]. "Implementation of the plain-error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985), citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 24} R.C. 3107.07(A) refers to "[a] parent of a minor," and R.C. 3107.07(B) refers to the "putative father of a minor." We have already discussed the role of putative fathers. In contrast, a "parent" is statutorily defined as "a legally recognized natural or adoptive parent

of a child." R.C. 3107.01(N) (unaffected by H.B. 5). As noted, R.T. did not fit within that category because he had not timely registered and had not initiated any judicial or administrative proceedings before the adoption petition was filed. Therefore, R.T. does not qualify as a legally recognized parent, i.e., as a parent for purposes of R.C. 3107.07(A).

{¶ 25} Under the law in effect when the petition was filed and when the court's decision was issued, the potential grounds for eliminating a legally recognized parent's consent under R.C. 3107.07(A) were that "the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition." *See* H.B. 5. Only one of these grounds had to be proven. At that time, R.C. 3107.07(B) likewise contained several options for eliminating the consent of putative fathers. Under (B)(1), consent was not required if a putative father failed to register with the putative father registry. As pertinent here, under (B)(2)(b), consent was also not required if: "the putative father has willfully abandoned or failed to care for and support the minor." No time restriction applied to (B)(2), and only one ground of the three listed in that subsection had to be established. In other words, a putative father's consent would not be required if a finding were made under either R.C. 3107.07(B)(1) or any ground in R.C. 3107.07(B)(2)(a)-(c).

{¶ 26} Under the statute as amended and effective in March 2025, the grounds in R.C. 3107.07(A) and R.C. 3107.07(B)(2)(b) are now essentially the same. The willfulness requirement has been deleted, and both subsections now require that a parent or putative father failed to have "more than de minimis contact" or failed "to provide meaningful and regular maintenance and support" for the minor. Subsection (A) retains the one-year restriction, while subsection (B)(2)(b) still has no time restriction.

{¶ 27} Because the decision in question here was issued in January 2025, i.e., before the amendments took effect, the content in the prior version of R.C. 3107.07 applies. Furthermore, since R.T. was a putative father and could not qualify as a legally recognized parent, R.C. 3107.07(B) was the proper statutory subsection to apply rather than R.C. 3107.07(A).

{¶ 28} The petition C.W. filed was a form (Form 18.0) that is part of a set of forms the Supreme Court of Ohio provides for use in probate cases. The form was last updated in 2017. Page two of the form asks for information about two categories of people: first, those whose consent is required; and second, those whose consent is not required. The title of the second category is: "Persons Whose Consent to the Adoption Is Not Required."

{¶ 29} Below this title is a box that can be checked, followed by the statement, "No person has timely registered pursuant to R.C. 3107.062 as a putative father of the minor. Attached is Ohio Department of Jobs and Family Services Form 1697." *See* Petition for Adoption of Minor (May 21, 2024), p. 2.   C.W. did not check this box. Again, as we said, while the form states that the ODJFS form is attached, there is no statutory requirement that the ODJFS certificate be filed with the court when the adoption petition is filed or before the consent decision is made; it must only be provided before the court grants the final or interlocutory adoption decree.

{¶ 30} Below that part of the petition are two lines labeled "A" and "B." These lines are used to identify those persons who do not have to consent. The reason for providing more than one line is that two people may need to be listed, i.e., the consent of both parents may not be required. Here, R.T. was listed as person "A." There was no person "B." *Id*. at p. 2. This is because the other party, Mother, had consented to the adoption.

{¶ 31} Beneath the two lines identifying persons "A" and "B," two separate grounds

for avoiding consent are listed. Next to each ground are boxes labeled "A" or "B" that can be checked. Clearly, this does not refer to R.C. 3107.07(A) or (B); it is simply a place to check possible potential grounds for each person, i.e., A or B. Two check-boxes are provided for each ground because the grounds for each person may differ. The two listed grounds are: (1) failure to provide de minimis contact; and (2) failure to provide maintenance and support. It is apparent that each person (A or B) may qualify under one ground or both. These grounds correspond with the wording of R.C. 3107.07(A) that was in effect when C.W.'s adoption petition was filed. *See* H.B. 5.

{¶ 32} Both grounds were checked for R.T., and no grounds were checked for person B, since there was no person B. While the form could be more clearly written, we find that R.T. is correct in arguing that C.W.'s petition alleged grounds under R.C. 3107.07(A) rather than R.C. 3107.07(B). The trial court also incorrectly focused on R.C. 3107.07(A) in its decision. *See* Order at p. 9-12. Despite this error, it was not plain error that affected the outcome and operated as a manifest miscarriage of justice, because R.T. was aware before the hearing that his failure to register was at issue, and the issue was also litigated at the hearing.

{¶ 33} Specifically, at the hearing, the following exchange occurred during R.T.'s direct examination by his own counsel:

Q. Counsel here [meaning opposing counsel] is going to talk to you about something called a putative father registry. *We've discussed that, yes?*

A. *Yes, ma'am.*

Q. And did you register with anything that –

A. Didn't know anything about it. Didn't know it even existed. Never heard of it before prior to this.

(Emphasis added.) Tr. at 37.

**{¶ 34}** Furthermore, the probate court correctly found that R.T.'s failure to register was fatal, which meant his consent was not required. Order at p. 7-8. Given this finding, the rest of the court's analysis was unnecessary. In fact, the court itself noted that fact. *Id*. at p. 8. The court's remarks about the factors in R.C. 3107.07(A), therefore, were simply dicta and had no impact. Accordingly, although the court erred, the error did not affect the outcome and did not result in a manifest miscarriage of justice. In view of this conclusion, we need not consider R.T.'s additional arguments about whether he failed, without justifiable cause, to have de minimis contact with the minor or to support the minor for more than a year before the adoption petition was filed.

**{¶ 35}** Based on the preceding discussion, R.T.'s sole assignment of error is overruled.

### III. Conclusion

**{¶ 36}** R.T.'s assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.